Scott Hite, OSB No. 165982
scott.hite@lawhq.com
LawHQ, P.C.
299 S. Main St. #1300
Salt Lake City, UT 84111
385-285-1090

Thomas Alvord (PHV forthcoming)
thomas@lawhq.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| NATHAN KING, individually and on behalf of all others similarly situated, | Case No.: 3:24-cv-01869 |
| Plaintiff, | CLASS ACTION ALLEGATION COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT 47 U.S.C. § 227 |
| v. | |
| SNAPCHAT INC., | |
| Defendant. | DEMAND FOR JURY TRIAL |

## INTRODUCTION

1.      "Being deluged with 'spam' telemarketing phone calls or text messages is the bane of modern life. In a world where countless companies try to capture our attention, it can be exasperating to receive yet another ping on a smartphone." *Borden v. eFinancial, LLC*, 53 F.4th 1230, 1231 (9th Cir. 2022).

2.      As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls…. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone

Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 591 U.S. 610, 613 (2020).

3.      In passing the TCPA, Congress "sought to strike a balance between individuals' privacy rights. . . and commercial freedoms." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019) (citation omitted).

4.      "Telemarketing is big business. . . . Telemarketing calls are also intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records." *Id.*

5.      One provision in the TCPA "opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result was the national Do-Not-Call registry." *Id.*

6.      "Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity." *Id.*

7.      The Do-Not-Call registry "means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number." *Id.*

8.      "[T]elemarketers are expected to check the list and avoid bothering those who have asked to be left alone." *Id.*

9.      Nathan King ("King") registered his phone number on the Do-Not Call registry ("DNCR") to stop the onslaught of intrusive telemarketing calls and text messages.

10.     But Snapchat, Inc. ("Snapchat") has ignored the DNCR and instead spammed King and thousands of others like him with unwanted and unsolicited telemarketing text messages.

11.    King wants this spam to stop. Many others do as well. Plaintiff's counsel has 31 other clients—in addition to King—who have reported unwanted and unsolicited telemarketing text messages from Snapchat.

12.    Further, Snapchat has been sued multiple times for telephone spam, but that has not gotten Snapchat to change its illegal practices. *See, e.g., Charman v. Snapchat Inc*., No. 3:24-cv-00694-DMS-VET, Dkt. 1 (S.D. Cal. Apr. 17, 2024) (alleging Snapchat sent 33 unsolicited text messages in violation of the DNCR).

13.    Because of Snapchat's widespread and abusive telemarketing practices, King brings this action individually, and on behalf of a putative class.

14.    "As a general matter, TCPA classes are routinely certified as class actions." *Physicians Healthsource, Inc. v. Dr. Diabetic Supply, LLC*, No. 12-22330-CIV, 2014 WL 7366255, at *9 (S.D. Fla. Dec. 24, 2014) (cleaned up). "Given the remedial purpose of the TCPA, it is no surprise that its cause of action would be conducive to class-wide disposition." *Krakauer*, 925 F.3d at 656.

## JURISDICTION AND VENUE

15.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the TCPA. 47 U.S.C § 227.

16.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a significant portion of the events giving rise to this lawsuit occurred in this district.

## PARTIES

17.    Plaintiff Nathan King is a citizen of Oregon, residing in Happy Valley.

18.    Defendant Snapchat Inc. is a Delaware corporation with its principal place of business in Santa Monica, CA.

## FACTUAL ALLEGATIONS

19.    King's home, phone, and privacy have been invaded by Snapchat's non-emergency text messages.

20.     King is the residential subscriber of the cell phone number 971-430-6002. King uses this phone number at home. King makes and takes personal calls and text messages on this phone number. King does not use this phone number in any business.

21.     King registered the number 971-430-6002 on the national Do Not Call Registry ("DNCR") on October 7, 2023.

22.     In the last four years, Snapchat has sent text messages to 971-430-6002.

23.     Snapchat sent at least 14 text messages to King, including the following:


i.  <u>Jan 21, 2024 at 8:31pm UTC</u>
    Snapchat: Check out new Stories from CCTV! https://snapchat.com/t/hejrlS2Xk58p
    Reply STOP to opt out.

ii. <u>Jan 23, 2024 at 8:40pm UTC</u>
    Carma Craine just added to their Snapchat Story! Tap to see what they're up to:
    https://snapchat.com/t/Ia7IVLm9yK3R Reply STOP to opt-out

iii. <u>Jan 25, 2024 at 8:13pm UTC</u>
     Snapchat: Check out new Stories from Angie Rose!
     https://snapchat.com/t/KqEcEss0ol2m Reply STOP to opt out.

iv. <u>Jan 26, 2024 at 10:46pm UTC</u>
    just added to their Snapchat Story! Tap to see what they're up to:
    https://snapchat.com/t/oqgzPfOmU1ir Reply STOP to opt-out

v.  <u>Jan 27, 2024 at 10:49pm UTC</u>
    Snapchat: Check out new Stories from Self Made! https://snapchat.com/t/LnerIBgz8QJ6
    Reply STOP to opt out.

vi. <u>Jan 30, 2024 at 2:28am UTC</u>
    Carma Craine just added to their Snapchat Story! Tap to see what they're up to:
    https://snapchat.com/t/N3lFCKxtCh9P Reply STOP to opt-out

vii. <u>Jan 31, 2024 at 2:58am UTC</u>
     Snapchat: Check out new Stories from Self Made!
     https://snapchat.com/t/cMLyv9caRR2V Reply STOP to opt out.

viii. <u>Feb 5, 2024 at 10:23pm UTC</u>
      Carma Craine just added to their Snapchat Story! Tap to see what they're up to:
      https://snapchat.com/t/szJnn0MTlGMv Reply STOP to opt-out

ix. Feb 7, 2024 at 6:02pm UTC
Snapchat: Check out new Stories from Self Made! https://snapchat.com/t/pisjF25xA8GB
Reply STOP to opt out.

x. Feb 8, 2024 at 6:42pm UTC
Carma Craine just added to their Snapchat Story! Tap to see what they're up to:
https://snapchat.com/t/fqFjgJJoWLPf Reply STOP to opt-out

xi. Feb 9, 2024 at 11:11pm UTC
Snapchat: Check out new Stories from Self Made! https://snapchat.com/t/c5tLrmA47o4b
Reply STOP to opt out.

xii. Feb 11, 2024 at 10:54pm UTC
Snapchat: Check out new Stories from Fast Future!
https://snapchat.com/t/VMO8aeGMLFQx Reply STOP to opt out.

xiii. Feb 13, 2024 at 10:56pm UTC
Snapchat: Check out new Stories from Self Made! https://snapchat.com/t/xLiq7vxMDjY9
Reply STOP to opt out.

xiv. Feb 15, 2024 at 2:06am UTC
Snapchat: Check out new Stories from Fast Future!
https://snapchat.com/t/Gk5uC96b8WZW Reply STOP to opt out.

24.     These text messages all came from the short code 74843.

25.     The short code 74843 is used by Snapchat.

26.     The text messages say they are from Snapchat and contain a Snapchat.com URL.

27.     Snapchat is a social media platform that allows users to post content, including photos and videos.

28.     But King does not have a Snapchat account and has never created a Snapchat account.

29.     Also, King never provided his number 971-430-6002 to Snapchat, never had a relationship with Snapchat, and never gave permission for Snapchat to send any type of communication.

30.     Furthermore, Snapchat sent the messages to King after he had registered his number on the DNCR—to stop unsolicited text messages like these!

31.     The purpose of Snapchat's text messages was to encourage King to purchase goods and services.

CLASS COMPLAINT                    5

32.     Although each text message *allegedly* promoted different Snapchat posts (known as snaps), this was nothing more than a ruse.

33.     This is evidenced by one simple fact: None of the hyperlinks in the text messages actually take you to a webpage to view the Snapchat post mentioned in the text message.

34.     Rather, each hyperlink requires you to download the Snapchat app—and create a Snapchat account—before you can view the Snapchat post.

35.     For example, the first text message to King contains this hyperlink: https://snapchat.com/t/hejrlS2Xk58p. When clicking this link, it loads a webpage with the option to download the Snapchat app in either the Google or Apple app store. It is *not* possible to view the Snapchat post on this webpage. You *must* first download the app and create an account.

36.     All the hyperlinks in the other text messages to King do the same thing.

37.     Notably, Snapchat has the functionality to share posts via a hyperlink that, when clicked, immediately opens the post—without the need to download the app or create an account. Here is an example: https://share.snapchat.com/m/_1h42HHf.

38.     This begs the question: Why does Snapchat send these text messages using hyperlinks that do not actually load the Snapchat post?

39.     The answer is simple: The purpose of the text messages is not really to share the Snapchat posts. Rather, the primary purpose is to get more app downloads and new app users.

40.     Snapchat is a publicly traded company.

41.     Snapchat generated approximately $4.6 billion dollars in revenue in 2023. *See* https://investor.snap.com/news/news-details/2024/Snap-Inc.-Announces-Fourth-Quarter-and-Full-Year-2023-Financial-Results/default.aspx, last accessed November 6, 2024.

42.     The way Snapchat makes money is from its users.

43.     In its quarterly public filings, Snapchat even has a metric for this called Average Revenue Per User ("ARPU"). *Id.*

44.     Snapchat's ARPU in North America in Q4 of 2023 was $8.96. *Id.*

45.     Once somebody downloads the Snapchat app, creates an account, and logs in, there are many ways that Snapchat monetizes the user. And the monetization involves encouraging users to purchase various goods and services.

46.     First, Snapchat+ is available for $29.99 per year on the Annual Plan or $47.88 per year on the Monthly Plan.

47.     Snapchat+ gives access to exclusive, experimental, and pre-release features:

 

48.     Snapchat+ is not an inconsequential aspect of Snapchat.

49.     Snapchat+ is promoted throughout the app.

50.     Snapchat has stated that "Snapchat+, our subscription service that offers exclusive, experimental, and pre-release features, reached over 7 million subscribers." *Id.*

51.     At the lower annual rate of $29.99 per year, with 7 million subscribers, this product alone generates $200 million+ in annual revenue for Snapchat.

52.    Second, Snapchat sells tokens in its app. Users can use these tokens to buy digital gifts that can be shared with other Snapchat users.




53.    Third, Snapchat sells clothing and outfits in the "Snapchat Store" that allows Snapchat users to customize their avatar:




54. Fourth, as users browse within the Snapchat app, Snapchat displays ads promoting other companies' goods and services, including Disney+, Adobe Illustrator, Taco Bell, custom T-Shirts, and more.

55. Here is a screenshot of a Disney+ ad in Snapchat, and the corresponding landing page once a user clicks on the ad.

 

56.    Here is a screenshot of an Adobe ad in Snapchat, and the corresponding landing page once a user clicks on the ad.

 

57.     Here are two other screenshots of ads within Snapchat. The first is a Taco Bell ad.
The second is a T-Shirt ad for the company FluffyTamer.




58.    These examples make abundantly clear why Snapchat sent the text messages to King using hyperlinks that do not actually load the Snapchat posts.

59.    The primary purpose of the messages was to get King to download the Snapchat app and create an account, so Snapchat could then peddle these various goods and services to King.

60.    King registered his phone number on the DNCR to stop this type of spam. But Snapchat does not care. Snapchat ignores the DNCR in an effort to grow its user base and revenue.

61.    Snapchat's text messages are a nuisance and annoyance to King. The text messages have invaded King's privacy. The spam has diminished the value of King's phone and King's enjoyment of life.

62.    Area code 971 covers the Portland, Oregon area. King's phone number has an area code of 971. Thus, Snapchat knew, or constructively knew, it was sending text messages into Oregon when it texted King's phone number.

63.    Based on the high volume of Snapchat spam that has been reported to Plaintiff's counsel, on information and belief, Snapchat has sent similar unsolicited text messages to thousands of other people in Oregon.

## LEGAL STANDARD

### National Do Not Call Registry

64.    Residential telephone subscribers who do not want to receive telephone solicitations may register their phone number on the national DNCR. 47 C.F.R. § 64.1200(c)(2).

65.    The TCPA proscribes callers from making "any telephone solicitation to… [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." *Id*.

66.    The DNCR applies to not only calls, but also "text messages to wireless telephone numbers." 47 C.F.R. § 64.1200(e).

### Purpose of the Text Message

67.    In determining whether a communication was initiated to promote goods or services for sale, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015) ("Notwithstanding the plain language of the

CLASS COMPLAINT                    13

regulations, defendants argue that we should consider only the content of the calls in determining whether they were telemarketing. We refuse to do so.") (citations omitted).

68.     "The FCC has determined that so-called 'dual purpose' calls, those with both a customer service or informational component as well as a marketing component, are prohibited." *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 917 (9th Cir. 2012).

69.     "Neither the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context. Any additional information provided in the calls does not inoculate them." *Id*. at 918.

70.     "If the call is intended to offer property, goods, or services for sale either during the call, or in the future (such as in response to a message that provides a toll-free number), that call is an advertisement." *In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C.R. 14014, 14099 ¶ 142, 2003 WL 21517853 (2003).

## CLASS ACTION ALLEGATIONS

71.     Pursuant to Federal Rule of Civil Procedure 23(b)(3), King brings this action on behalf of all other persons similarly situated throughout the United States.

72.     King proposes the following Class:

> **The DNCR Class**
> All people in the United States (1) who do not have a Snapchat account (2) to whom Snapchat initiated, or caused to be initiated, more than one text message within any 12-month period, (3) to their residential cellular telephone number, (4) after registering their phone number on the national Do Not Call Registry, (5) within the last four years from the filing of this action through the date of class certification.

73.     King does not know the exact number of class members but reasonably believes the number to be in the millions, thus making joinder of all class members impracticable.

74.     Class members are identifiable through phone records and phone number databases.

75.     There are questions of law and fact common to King and the class member including but not limited to:

       i.   Whether Snapchat initiated the text messages.

  ii. Whether Snapchat had consent to initiate the text messages.

  iii. Whether King and class members are entitled to statutory damages and trebled damages.

76. King's claims are typical of the claims of the class members. King's claims, like the class members' claims, arise out of the same common course of conduct by Snapchat and are based on the same legal and remedial theories.

77. King is an adequate representative of the class because King's interests do not conflict with the interests of the class members, King will fairly and adequately protect the interests of the class members, and King is represented by counsel skilled and experienced in class actions, including TCPA class actions.

78. Common questions of law and fact predominate over questions affecting only individual class members.

79. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the damages are statutory. Notice to class members can be provided by mail or other means. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

80. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

**FIRST CAUSE OF ACTION**
**Illegal Solicitation of Persons on the DNCR**
**(On Behalf of King and the DNCR Class)**

81. Snapchat violated 47 C.F.R. § 64.1200(c)(2) by initiating, or causing to be initiated, text messages to King and members of the DNCR Class after they registered their phone numbers on the DNCR.

82. King and members of the DNCR Class have been damaged and are entitled to an award of $500 in statutory damages for each violation. 47 U.S.C. § 227(c)(5).

83.    The court should award $1,500 in statutory damages for each knowing or willful violation. *Id.*

## RELIEF REQUESTED

King respectfully requests the Court grant the following relief.

A.  Certification of the proposed Class;

B.  Appointment of King as class representative;

C.  Appointment of the undersigned as lead counsel for the Class;

D.  An award of damages to King and class members, as allowed by law;

E.  Injunctive relief, as allowed by law;

F.  An award of fees, costs, and interest, as allowed by law; and

G.  Orders granting such other relief as the Court deems necessary, just, and proper.

## JURY DEMAND

King requests a jury trial as to all claims of the Complaint so triable.


DATED: November 11, 2024                    Respectfully Submitted,

                                            /s/ *Scott Hite*
                                            Scott Hite